IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | NO. 13-236 |
| MOHAMED MANSARAY | : | NO. 15-526 |

MEMORANDUM

Bartle, J.                                                                 June 10, 2020

      The Court has before it the petition of defendant Mohamed Mansaray[1] for an order transferring him to home confinement under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020).

      On July 2, 2014, defendant pleaded guilty to an information which charged him with one count of conspiracy to defraud an agency of the United States in violation of 18 U.S.C. § 371 and 13 counts of aiding and assisting in the preparation of false tax returns in violation of 26 U.S.C. § 7206(2).  The Government brought these charges in connection with false and fraudulent federal income tax returns that the defendant prepared for clients and filed with the Internal Revenue Service for tax years 2008 through 2012.  Defendant used the personal identities of foster children with Catholic Social Services

---

1.   Defendant is represented by counsel.

fraudulently to claim dependents and thus deductions on his clients' tax returns.

Defendant's crimes continue unabated.  On November 3, 2015, a grand jury charged defendant in a separate criminal action with 10 counts of wire fraud in violation of 18 U.S.C. § 1343, 10 counts of aggravated identity theft in violation of 18 U.S.C. § 1028A, and 10 counts of aiding and assisting in the preparation of fraudulent income tax returns in violation of 26 U.S.C. § 7206(2), all in connection with defendant's continued operation of his illicit tax preparation business and use of false dependents for tax years 2013 and 2014.  For these charges, defendant was arrested on November 5, 2015 and released on bail.

Defendant's crime spree still did not end at this point.  On April 19, 2016, a grand jury returned a superseding indictment charging him with additional counts for preparing false tax returns for the 2015 tax year.

Defendant is currently serving his sentence of 120 months at FCI Schuylkill.  His projected release date is December 10, 2024.  Defendant seeks immediate release into home confinement under Section 12003 of the CARES Act which was

signed into law to address ongoing concerns related to COVID-19 in the federal prison system.[2]

The CARES Act eliminates the maximum amount of time the Director of the Bureau of Prisons ("BOP") may place a prisoner on home confinement toward the end of his or her sentence. See CARES Act § 12003(b)(2). This time limit is set forth in the First Step Act. See 18 U.S.C. § 3624(c). The First Step Act instructs the Director of the BOP:

> (1) . . . to the extent practicable, [to] ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). The First Step Act also provides that:

> (2) . . . [t]he authority under this subsection may be used to place a prisoner in home confinement for <u>the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.</u> The [BOP] shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

18 U.S.C. § 3624(c)(2) (emphasis added).

---

2. The Government represents that as of May 28, 2020 there are no inmates or staff who have confirmed positive test results for the coronavirus at FCI Schuylkill.

The CARES Act authorizes the BOP Director to release certain inmates into home confinement during the coronavirus pandemic. It provides:

> During the [period beginning on the date on which the President declared a national emergency . . . with respect to the Coronavirus Disease 2019], if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the [BOP] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CARES Act § 12003(b)(2).

On April 3, 2020, United States Attorney General William Barr issued a memorandum in which he found that emergency conditions as a result of COVID-19 have materially effected the functioning of the BOP. He granted the Director of the BOP the authority to release into home confinement certain inmates at greater risk due to COVID-19 based on several discretionary factors. The Attorney General set out these factors in a separate memorandum dated March 26, 2020:

- The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum-security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;

- The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;

- Whether the inmate has a demonstrated and [sic] verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility; [and]

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention.

In addition to these factors, before release into home confinement, an inmate must be examined by the BOP Medical Director (or a designee) for risks related to COVID-19. The Medical Director must assess those risks at the inmate's facility as well as the location where he or she seeks home confinement.

Defendant seeks home confinement under Section 12003(b)(2) of the CARES Act on the grounds that certain of his medical conditions put him at greater risk if he were to contract COVID-19. He contends that he meets the requirements

-5-

for release to home confinement set out in Attorney General Barr's March 26, 2020 memorandum.  Defendant does not seek a reduction of his sentence based on compassionate release.  See 18 U.S.C. § 3582(c)(1)(A).

The Congress did not provide the Courts with the authority to review the BOP Director's decision whether to release inmates into home confinement at an earlier time under the CARES Act.  See, e.g., United States v. Ashby, Criminal Action No. 15-0154, 2020 WL 2494677, at *2 (M.D. Pa. May 14, 2020); United States v. Cruz, Criminal Action No. 95-0204, 2020 WL 1904476, at *4 (M.D. Pa. Apr. 17, 2020).  This discretion rests solely with the Attorney General and the BOP Director.  Cruz, 2020 WL 1904476, at *4.

We will therefore deny the petition of defendant Mohammed Mansaray for an order transferring him to home confinement under the CARES Act.